**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**MUNIBUDDIN YOUSUF and**                                     **CIVIL ACTION**
**YOUSUF, INC. d/b/a**
**READ ROAD SHELL**                                          **NO. 04-2787**

**VERSUS**                                                   **SECTION "L"(5)**

**MOTIVA ENTERPRISES, L.L.C.**

<u>**ORDER AND REASONS**</u>

Before this Court is a Motion for Award of Statutory Attorney's Fees and Costs, and for

Subsequent Dismissal of Remaining Claims, Without Prejudice, as Moot, by Plaintiffs

Munibuddin Yousuf and Yousuf, Inc., d/b/a Read Road Shell (Rec. Doc No. 28).  As this matter

was recently transferred to this Court, the Court studied the legal memoranda submitted by the

parties, the record and the applicable law.  It is now fully advised on the issues and ready to rule.

For the following reasons, the Plaintiffs' Motion for Award of Statutory Attorney's Fees and

Costs is DENIED and Plaintiffs' Motion to Dismiss without Prejudice is GRANTED.

**I.  BACKGROUND**

Plaintiffs Munibuddin Yousuf and Yousuf, Inc., d/b/a Read Road Shell ("Yousuf")

operated a Shell retail motor fuel station located on Read Boulevard in New Orleans, pursuant to

1

several contracts with Defendant Motiva Enterprises ("Motiva"). These contracts are governed by the Petroleum Marketing Practices Act, 15 U.S.C. §2801, *et seq.* ("PMPA").

Yousuf operated the station from 1992 until 2005, when it was destroyed in the aftermath of Hurricane Katrina. Over the years in which it was in operation, the gas station passed several inspections conducted by Motiva.  However, in a September 2004 letter, Motiva advised Plaintiffs that Motiva was terminating Plaintiffs' franchise, effective December 2004.  The termination was based on Yousuf's alleged failure to meet Motiva's image standards during inspections of the gas station in January and June of 2004.

In November 2004, Yousuf moved for injunctive relief against Motiva and alleged that Motiva had violated the PMPA by falsely or erroneously assessing failing grades to the station during the inspections and/or that Motiva's inspection program had been applied in an arbitrary and discriminatory manner.  Plaintiffs' request for a temporary restraining order was set for hearing in January 2005, a hearing date that fell after the December 2004 effective termination date stated in Motiva's September 2004 letter.  On November 22, 2004, the parties filed a joint motion to approve a stipulated standstill agreement, extending the franchise agreement between the parties until the entry of an order on the application for a preliminary injunction.  This joint motion specifically stated: "[w]ithout admitting liability or fault, the [p]arties seek to maintain the status quo...."  (Rec. Doc. No. 11).  The Court promptly granted the order to approve the stipulated standstill agreement on November 23, 2006, before the franchise agreement would terminate according to Motiva's letter.

After extensive discovery, the parties filed a joint stipulation and motion for entry of a consent judgment on the Plaintiffs' motion for a preliminary injunction on December 22, 2004.

(Rec. Doc. No. 19).  The parties further requested that the Court enter the consent judgment in a form attached as an exhibit to their motion.  The Court granted the consent judgment in the form requested by the parties on December 23, 2004.  Thus, the Plaintiffs' alternative claim for monetary damages was rendered moot because the preliminary injunction prevented termination of Yousuf's franchise until a determination was made on their permanent injunction claim.  Additionally, in the consent judgment on the Plaintiffs' motion for preliminary injunction, the Court reserved judgment on the Plaintiffs' motion for award of costs and attorney's fees pending the application and hearing on the Plaintiffs' claim for permanent injunctive relief.  That claim was set for jury trial beginning June 2006.  In November 2005, however, Motiva rescinded its notice of termination after the service station was severely damaged by Hurricane Katrina and considered inoperable for the foreseeable future.

Yousuf states that because they were successful in obtaining the standstill agreement (the functional equivalent of a temporary restraining order) and the preliminary injunction, and because Motiva rescinded termination of the franchise, Plaintiffs are entitled under Section 2805(d) of the PMPA to an award of attorney's fees and costs, and the dismissal of the remainder of the Plaintiffs' claim without prejudice, as moot.  Motiva in turn argues that Yousuf is not entitled to prevailing party status and thus should be denied an award of attorney's fees and costs as a matter of law.  Motiva has no objection to the dismissal of the remainder of claims.

## II. LAW AND ANALYSIS

### A. Attorney's Fees and Cost

Section 2805(d)(1) of the PMPA contains a fee-shifting provision which provides that a

franchisee may be entitled to attorney's fees and costs if that franchisee prevails in an action

brought under Section 2805(a) of the PMPA.  15 U.S.C. § 2805 (d)(1).  Although the term

"prevailing party" is not defined within the PMPA,  ample case law exists on the meaning of the

term in fee shifting provisions of other statutes.  In *Hanrahan v. Hampton*, 446 U.S. 754, 757,

100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980), a case concerning the Civil Rights Attorney's Fees

Awards Act of 1976, 42 U.S.C. § 1988, the United States Supreme Court defined "prevailing

party" as one who has "established his entitlement to some relief on the merits of his claims,

either in the trial court or on appeal."  According to *Buckhannon Bd. & Care Home, Inc. v. West

Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604, 121 S.Ct. 1835, 1849, 149

L.Ed.2d 855 (2001), a case involving application of the fee shifting provisions in the Fair

Housing Amendments Act ("FHAA"), 42 U.S.C. § 3613(c)(2) and the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12205, relief that may serve as a basis for an award of

attorney's fees includes not only judgments on the merits, but also court-ordered consent

decrees.  This is because an enforceable judgment on the merits or a consent decree establishes a

"material alteration of the legal relationship of the parties" necessary to permit an award of

attorney's fees.  *Id.* at 604 (quoting *Texas State Teachers Assn. v. Garland Independent School

Dist.*, 489 U.S. 782, 792-93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

    This is so even if the court-ordered consent decree does not always include an admission

of liability by the defendant.  *Texas State Teachers Assn.,* 489 U.S. at 792.  In contrast, an

interlocutory ruling which reverses a dismissal for failure to state a claim, reversal of a directed

verdict for the defendant and a declaration of unconstitutionality absent judicial relief would not

constitute a legal victory for the plaintiff because there is no material alteration in the parties'

legal relationship.  *Buckhannon*, 532 U.S. at 605-06.

Thus, the key to determining whether a party is entitled to attorney's fees on the grounds they have "prevailed," is whether there has been a judicially sanctioned change in the parties' legal relationship.  *See id.*, 532 U.S. at 605.  *Buckhannon* specifically rejected the "catalyst theory," previously followed by many Circuit courts, which held that plaintiffs were considered prevailing parties even if the case settled or became moot as long as the lawsuit itself was a substantial factor or significant catalyst that caused the defendant to voluntarily change its behavior to the result the plaintiff desired.  *Id.*; *see also Bailey v. Mississippi*, 407 F.3d 684, 686-87 (5th Cir. 2005).  *Buckhannon* held that a defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary "judicial *imprimatur*"on the change.  *Buckhannon,* 532 U.S. at 605.

The parties do not dispute that *Buckhannon* applies to this case.[1]  The issue concerns whether the preliminary injunction, granted on consent of the parties, established a judicially sanctioned change in the parties' legal relationship within the meaning of *Buckhannon,* or in other words, if the granting of the preliminary injunction was relief that established the Plaintiffs as the "prevailing party."

*Kothari v. Motiva Enterprises, L.L.C.*, No. H-05-0499, 2006 LEXIS 55800 (S.D. Tex. July 27, 2006) dealt with similar facts and the same issue.  In that case, the plaintiff, a service station franchisee, filed suit against the franchisor, the same defendant in this case, for violations of the PMPA, among other claims, after the defendant issued a notice of termination to the

---

[1]*See John T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 556-57 (3rd Cir. 2003) (stating wide applicability of *Buckhannon* in interpreting fee shifting provisions though case dealt specifically with those of FFHA and ADA).

plaintiff.  The district court entered an agreed temporary restraining order which maintained the status quo pending a determination on the merits.  *Id.* at *4.  Shortly thereafter, the parties followed with an agreed preliminary injunction, entered by the court, which preserved the status quo and allowed the franchisee to continue operations.  *Id.*  The defendant subsequently voluntarily rescinded its notice of termination upon the plaintiff's agreement that he would comply with training and inspection.  *Id.* at *5.  The franchisee plaintiff later claimed that he was entitled to an award of attorney's fees under Section 2805(d) of the PMPA.  *Id.* at *14.

The court in *Kothari* determined that the preliminary injunction did not meet the prevailing party standard elucidated in *Buckhannon*.  "It did not dispose of the plaintiff's claims on the merits or affect the underlying dispute, but was instead a temporary measure meant to preserve the status quo pending a trial on the merits."  *Id.* at *15 (citing *Northern Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086 (8th Cir. 2006), which stated that "virtually every circuit court" considering issue determined preliminary injunction granting temporary relief to merely preserve status quo does not grant prevailing party designation)).  Nor was the plaintiff a prevailing party because of the defendant's voluntary decision to rescind the notice of termination.  Though the plaintiff's ultimate goal in the lawsuit was accomplished through the defendant's voluntary change in conduct, the required *judicial imprimatur* on the change was missing.  *Id.* (citing *Buckhannon*, 532 U.S. at 605).  Furthermore, Section 2805(c) of the PMPA states that as a threshold matter, a party must establish that the franchise was terminated or not renewed in order to maintain a claim, but the plaintiff's franchise was never terminated and was no longer subject to cancellation through the rescission of the termination notice.  *Id.* at *16.  Thus, the court in *Kothari* found that the plaintiff was not entitled to an award of attorney fees

under the PMPA because he had not established that he was a "prevailing party."  *Id.*

Here, the Plaintiffs argue that they are entitled to attorney's fees, the award of which is discretionary under the PMPA, "by virtue of their success in obtaining" the standstill agreement, the preliminary injunction, and Motiva's subsequent rescission of franchise termination.  They argue that their complaint was not merely a "catalyst" for Motiva's recession of the termination notice, but that their "efforts led directly" to an enforceable judgment, the preliminary injunction by consent, which allowed Yousuf to continue operating the gas station. Thus, Plaintiffs claim that they were the party favored under the settlement (the agreement to the preliminary injunction) and they should be deemed a prevailing party under *Buckhannon*.

Plaintiffs cite *Ketterle v. BP Oil, Inc.*, 909 F2d 425 (11th Cir. 1990) and *Lyons v. Mobil Oil Co.*, 554 F.Supp. 199 (D. Conn. 1982), two cases decided before the *Buckhannon* decision, for the proposition that a party who obtained injunctive relief is a prevailing party entitled to costs and attorney's fees under the PMPA.  In *Ketterle*, the court noted that the plaintiff obtained the ultimate relief sought, continuation of a franchise contract, which could have been accomplished by completion of the lawsuit, but further litigation was made unnecessary by the defendant's rescission of termination notice.  *Ketterle*, 909 F.2d at 430.  In *Lyons*, the court reasoned that designating prevailing party status to a franchisee who obtained injunctive relief, regardless of whether actual or exemplary monetary damages were awarded, was in accord with the PMPA's remedial purpose to equalize the bargaining power of the parties.  *Lyons*, 554 F.Supp. at 201-02.  Thus, the Plaintiffs argue that if Yousuf is not deemed a prevailing party, the purpose of PMPA will be contravened.

Plaintiffs further argue that *Kothari* is easily distinguishable and thus not applicable to

this case.  First, the Plaintiffs state that the plaintiff in *Kothari* did not prevail on his motion for a preliminary injunction, which was held open and never disposed of, despite an "agreed preliminary injunction."  Second, Motiva's rescission of the termination notice in *Kothari* was by agreement with the plaintiff, who thereby voluntarily mooted the merits of the suit without judicial involvement.

In response, Motiva argues that the "standstill agreement" did nothing more than preserve the status quo and that it only entered this agreement to accommodate Yousuf because the Court's schedule would not permit the parties to argue the Plaintiffs' motion for a temporary restraining order until after the termination date stated in Motiva's notice.  Motiva further argues that the preliminary injunction was granted due to a joint motion filed by the two parties and did nothing more than continue to maintain the status quo until the parties could be heard on the merits at a trial regarding the permanent injunction claim.  Lastly, Motiva states that it only rescinded its termination notice because Hurricane Katrina caused severe damage to the service station and the station was thereafter inoperable.  Therefore, it made little sense to continue to pursue the termination of its relationship with Yousuf at that time.  The rescission of the notice was not a "capitulation" as Yousuf would characterize it, but rather a recognition that the relationship had been terminated through circumstances beyond the control of either party.

The Court finds that Yousuf is not entitled to prevailing party status under *Buckhannon* because the Court did not consider the merits of Plaintiffs' claim for injunctive relief.  The stipulation order and preliminary injunction, instead, were granted on the consent of the parties, strictly in order to maintain the status quo.  *See John T,* 318 F.3d at 558-59 (holding that a preliminary injunction alone is insufficient to award attorney's fees because the interim relief is

8

not "merits-based").  The Court did not order a change in the legal relationship of either party at any point in the litigation process.  Indeed, the consent judgment on plaintiffs' motion for preliminary injunction, on which the Plaintiffs rely, expressly states that "the Court makes no findings of fact or conclusions of law pursuant to F.R.C.P. Rule 52 in connection with plaintiffs' motion for preliminary injunction, such findings and conclusions being waived by the parties and deferred until the court enters judgment on plaintiffs' claim for permanent injunction."  (Rec. Doc. No. 20).  The consent judgment, moreover, orders that Plaintiffs' motion for award of costs and attorney's fees is to be deferred until application and hearing following judgment on the plaintiffs' claims for permanent injunctive relief.  The claim for the permanent injunction was never litigated, so that there was no resolution on the merits.  Because Plaintiffs did not have to show that they were entitled to either a preliminary or a permanent injunction and because there was no alteration in the legal relationship of the parties, Yousuf is not entitled to prevailing party status and an award of attorney's fees and costs.

Neither *Lyons* nor *Ketterle* supports the Plaintiffs' position.  In both these cases, the courts granted injunctions based on evidentiary hearings.  Furthermore, in *Dzamko v. Amoco Oil Co.*, No. B-86-581, 1990 U.S. Dist. LEXIS 11580 (D. Conn. July 2, 1990), decided by the same court that adjudicated the *Lyons* case, an award of attorney's fees was denied because the court held that facts distinguished it from *Lyons* and other cases in which fees were awarded under the PMPA or other statues with fee shifting provisions.  First, the Court found that the preliminary injunction prohibiting termination of the franchise was agreed to by the parties rather than through a determination on the merits by a tribunal, unlike the preliminary injunction in *Lyons* which was adjudged on the merits.  *Dzamko*, 1990 U.S. Dist. LEXIS 11580, at *5.  Second, the

9

court found that the goal of the plaintiff's complaint, to prevent his franchise from being terminated in violation of the PMPA, was not accomplished by judgment, consent decree or through settlement, and thus the plaintiff franchisee was not a prevailing party. *Id.* at *6. Though the reasoning of the second point is not applicable in light of *Buckhannon* which preceded this case, the first point is directly in line with this Court's reasoning today.

Neither of the Plaintiffs' two reasons explaining the non-applicability of the *Kothari* holding negate a determination that Yousuf was not a "prevailing party." Yousuf claims that the preliminary injunction in *Kothari* was meaningless because at any time "Motiva could put the defendant to the task of proving up his preliminary injunction motion" and "could be disregarded at whim." (Rec. Doc. No. 55). In this case, the Court deferred making its findings of fact or conclusions of law until disposition of the claim for a permanent injunction, which the Court never heard. Thus, it could be argued that the parties here were also never put to the task of proving anything because they never presented their arguments to the Court.

That Motiva's rescission of its termination notice in *Kothari* was done through an agreement with the plaintiff whereby the plaintiff agreed to certain concessions, rather than through unilateral notice as in this case, is of no significance to the Court's determination. In this case, Motiva's unilateral notice was due to the fact that circumstances beyond the control of either party effectively made the station inoperable, so that there was little purpose in pursuing termination. Motiva's decision to rescind not only does not seem to have resulted from the efforts of the parties as in *Kothari*, but the Court also took no part in Motiva's decision, on the merits or otherwise.

Additionally, the Plaintiffs here, as in *Kothari,* voluntarily mooted the merits of the suit.

10

Yousuf filed a motion with Motiva to remove the matter from the docket in Spring of 2006 because the parties agreed that a trial on the merits was moot. Yousuf now seeks, on its own initiative, to dismiss the remaining claims through its current motion.

Finally, the Court finds that a contrary ruling would deter Defendant franchisors, who typically have better financial resources, from cooperating and agreeing to standstill agreements or motions to grant consent judgments on preliminary injunctions that would preserve the status quo until the Court makes a determination on the merits. The result would be that the status quo would not be preserved pending an injunction hearing, which would contravene the PMPA's purpose of protecting franchisees from illegal termination.

This Court is mindful of two policy arguments given in *Buckhannon* concerning reasons for its holding. First, the Court found that a defendant would be deterred from voluntarily altering its conduct if it would leave it exposed to having to pay the other party's attorney's fees. *Buckhannon*, 532 U.S. at 609. Second, the Court reasoned that a catalyst theory hearing would entail a "second major litigation" requiring the "analysis of the defendant's subjective motivations in changing its conduct and analysis that 'will likely depend on a highly fact-bound inquiry and may turn on reasonable inferences from the nature and timing of the defendant's change in conduct.'" *Id.* (internal citations omitted).

 Though Yousuf claims that it is not contending it is entitled to an award for fees and costs under the catalyst theory, because the merits of the claim were not litigated and because it alleges that it is entitled to an award "by virtue of its success in obtaining" the stipulation order, preliminary injunction and termination rescission, in actuality, that is exactly what it is doing. Its argument is, in effect, an argument for awards under the catalyst theory, which is prohibited

as a matter of law.

**B. Dismissal of Remaining Claims**

As the franchise was never terminated and is no longer subject to cancellation due to Motiva's rescission of its termination notice and as both parties have no objection, the Court finds that the remainder of Plaintiffs' claims brought under the PMPA are rendered MOOT and are hereby DISMISSED without prejudice.

**III. CONCLUSION**

Accordingly, **IT IS ORDERED** that Plaintiffs' Motion for Award of Statutory Attorney's Fees and Costs be and is hereby **DENIED** and the Motion to Dismiss the Remaining Claims is hereby **GRANTED.**

New Orleans, Louisiana, this __14th__ day of September, 2006.

UNITED STATES DISTRICT JUDGE